■ CARMELO NOBLE, Respondent, v CALVIN ACKERMAN, Appellant. [675 NYS2d 86] —Judgment, Supreme Court, Bronx County (Janice Bowman, J.), entered March 11, 1997, which, upon a jury verdict, awarded plaintiff damages in the principal sum of $700,000, reversed, on the law, the facts and in the exercise of discretion, without costs, and the matter remanded for a new trial.

Plaintiff, 55 years old, alleges that on August 31, 1992 he sustained serious injuries when his parked car was struck from behind by defendant's decedent's vehicle. He commenced this action for personal injuries in June 1993, asserting he had sustained serious injury as defined in Insurance Law § 5102 (d), including sprains to the cervical and lumbar spines with radiculopathy, bulging discs at L3/L4 and L4/L5 and restriction and limitation of motion of the head and neck with pain. At the conclusion of plaintiff's case at trial, defendant moved to dismiss for failure to make a prima facie showing of serious injury under Insurance Law § 5102 (d). The trial court denied that motion, and further refused defendant's request to submit the issue of serious injury to the jury as a question of fact. The court stated that the fact that plaintiff suffered a herniated disc established the statutory threshold as a matter of law,

and the only issue for the jury to decide was causation. The jury returned a verdict in favor of the plaintiff of $350,000 for past pain and suffering and $350,000 for future pain and suffering, and judgment was entered thereon.

On appeal, defendant argues that the serious injury threshold was not met, and, alternatively, that the court erred in not submitting the issue to the jury. The trial evidence established that immediately after the accident, plaintiff was examined in the emergency room, given pain medication and released. Since he continued to experience neck, back and shoulder pain, he sought treatment at the Neuro Care Center, where he was diagnosed with spasm and tenderness in the cervical spine and lumbar spine, with diminished range of motion. The results of X-rays, an EEG and MRI tests were all normal, except that the MRI revealed some straightening of the normal lordotic curvature. A CAT scan showed "no evidence of a herniated disc" but revealed a diffuse bulging of the disc with compression of the thecal sac at L3/L4 and L4/L5. As plaintiff continued to experience neck, back and shoulder pain "like a sharp pain, hot going through my body," he continued to receive treatment and therapy from Neuro Care until the time of trial.

Plaintiff was first treated by Dr. Waltz, who testified as his expert medical witness at trial, in March 1995. Dr. Waltz found that plaintiff had spinous muscle spasms, a "decrease to sensation over the L-5 dermatome bilaterally," and a decrease in motion of the head, neck and lumbar spine because of the pain he was suffering, and that his straight-leg raising was "positive at about thirty-five degrees." Dr. Waltz's diagnosis was cervical and lumbosacral radiculopathy.

However, an MRI performed on September 21, 1995 revealed a left-sided herniated disc at C5/C6 that was "subtly deforming the cord on the left." Dr. Waltz surgically removed the herniated disc on January 4, 1996. At trial, Dr. Waltz testified that the plaintiff's injuries were caused by the accident and were permanent in nature. He further testified that after the surgery plaintiff continued to suffer back pain and cervical discomfort, which he collectively characterized as chronic "vertebrogenic" pain.

Plaintiff testified that the pain resulting from the injury disrupted his sleep, and interfered with his prior activities such as going on weekend trips, going out to restaurants, cooking and going out dancing with his wife. However, he admitted performing household chores, and that he did not do much dancing prior to the instant accident because of a disabling leg injury in 1980, which required him to walk with a cane. Dr.

Waltz also testified that he did not place any restrictions on plaintiff's activities, nor did he know of any restrictions.

Defendant called three medical witnesses who had examined plaintiff prior to trial. Two of the doctors confirmed that plaintiff had a disc injury, and that he had a decrease in range of motion of the neck, shoulder and lumbosacral spine. However, both of these doctors also opined that these problems, especially the disc injury, were more likely the product of the normal aging process, and that the limitations on plaintiff's range of motion were difficult to assess in light of plaintiff's assertions of pain. A third physician gave his opinion that plaintiff was "prevaricating."

In light of the above evidence, we quickly reject defendant's first argument that the court should have dismissed the action after plaintiff's case for failure to demonstrate a prima facie case of serious injury. Plaintiff's bill of particulars alleged that plaintiff suffered a serious injury under Insurance Law § 5102 (d), to wit, "permanent consequential limitation of use of a body organ [or] member" and/or a "significant limitation of use of a body function or system." The testimony by plaintiff and Dr. Waltz provided evidence of injuries to plaintiff's cervical spine and disc, resulting in chronic pain and a decreased range of motion. It was asserted that the injuries were caused by the accident involving this defendant's decedent, and were permanent in nature. This evidence, if believed, was plainly sufficient to establish a prima facie case of serious injury (*see, Florez v Diaz*, 243 AD2d 607; *Huggins v Daniels*, 237 AD2d 491, 492; *Puma v Player*, 233 AD2d 308; *Thomas v Hulslander*, 233 AD2d 567; *Parker v Defontaine-Stratton*, 231 AD2d 412).

It was error, however, to refuse defendant's request to submit the question of whether plaintiff sustained serious injury under the Insurance Law to the jury as a question of fact (*Cooper-Fry v Kolket*, 245 AD2d 846; *Reynolds v Burghezi*, 227 AD2d 941, 942; *Quaglio v Tomaselli*, 99 AD2d 487, 488; *see also, Brown v Stark*, 205 AD2d 725; *Perez v Rousseau*, 190 AD2d 1040, 1041). Contrary to the view of the trial court, the existence of a herniated disc does not per se constitute serious injury (*see, Jackson v United Parcel Serv.*, 204 AD2d 605; *see also, Cacaccio v Martin*, 235 AD2d 384; *Schultz v Von Voight*, 216 AD2d 451, *affd* 86 NY2d 865; *Syrkett v Burden*, 176 AD2d 938). Even accepting that plaintiff's disc and cervical spine injuries were medically verified, it was still incumbent upon plaintiff to provide objective evidence of the extent or degree of the alleged physical limitations resulting from the injuries and their duration (*see, Parker v Defontaine-Stratton, supra; Mickelson v*

*Padang,* 237 AD2d 495, 496; *Rodriguez v Kwan Cheung Tsui,* 233 AD2d 382; *David v Green,* 233 AD2d 476, 477).

The evidence adduced by plaintiff was clearly insufficient to grant him a directed verdict on the issue of serious injury (*Cooper-Fry v Kolket, supra*). Where conflicting medical evidence is offered on the issue of whether the plaintiff's injuries are permanent or significant, and varying inferences may be drawn therefrom, the question is one for the jury (*Cooper-Fry v Kolket, supra; Reynolds v Burghezi, supra; Greene v Frontier Cent. School Dist.,* 214 AD2d 947). Subjective expressions of pain alone will not suffice to establish serious injury (*see, Scheer v Koubek,* 70 NY2d 678, 679; *Cacaccio v Martin, supra*). The plaintiff must specify how the pain limits the use of a body function or organ, or affects his or her routine daily activities (*see, Cruz v Calabiza,* 226 AD2d 242).

In the case at bar, plaintiff's testimony concerning his physical limitations was unspecific and partially impeached, and his own expert, Dr. Waltz, admitted that he placed no restrictions on plaintiff's activities, nor did he know of any (*see, Lashway v Groshans,* 241 AD2d 832). Moreover, the testimony of the defense experts strongly suggested that the limitations in range of motion were not objectively verifiable, and were supported only by plaintiff's subjective expressions of pain. In these circumstances, the jury should have been permitted to decide whether plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d). Additionally, we note that the jury's finding that plaintiff's herniated disc at C5/C6 was proximately caused by the accident involving defendant's decedent is barely supportable by the medical evidence adduced at trial (*see,* CPLR 4404 [a]; *David v Green, supra*).

We also agree with defendant that it was an improvident exercise of discretion to preclude the introduction of video surveillance tapes. The tapes, taken by defense investigators, depict plaintiff engaged in activities such as carrying a ladder and tool box, working under the hood of his car and bending down to put air in the tires of his car. Plaintiff moved to preclude the tapes because defendant had failed to provide contemporaneous audiotapes made by the investigators and the reports transcribing those audiotapes. The court granted plaintiff's request for a mid-trial hearing, at which it was disclosed that the audiotapes had been destroyed, but that the transcribed reports had been provided to plaintiff. The court precluded the tapes, believing such action was mandated by CPLR 3101 (i).

CPLR 3101 (i) provides that "there shall be full disclosure of

any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof" involving any party to the proceeding. Contrary to plaintiff's argument, we do not believe that this section removes the trial court's discretion in determining whether disclosure violations warrant the sanction of preclusion (*see, Lamagna v New York State Assn. for Help of Retarded Children*, 222 AD2d 559, 560; *DeCandia v Hudson Waterways*, 194 AD2d 314, 315, *lv denied* 82 NY2d 659). In this case, given the clear relevance of the evidence to the crucial issue in this case of whether plaintiff sustained serious injury under Insurance Law § 5102 (d) (*see, O'Callaghan v Walsh*, 211 AD2d 531, 531-532), we conclude that it was an improvident exercise of discretion to preclude the videotapes (*see, DeCandia v Hudson Waterways, supra; cf., Lamagna v New York State Assn. for Help of Retarded Children, supra*). Of course, the authenticity and accuracy of the videotapes may be challenged at trial (*Hicklen v Broadway W. St. Assocs.*, 166 Misc 2d 12)..

Since these errors may well have affected the jury's verdict as to both liability and damages (*see, McPhillips v Herzig*, 172 AD2d 427, 428), we remand for a new trial on all issues. Concur—Sullivan, J. P., Mazzarelli and Andrias, JJ.

Rubin, J., dissents in a memorandum as follows: Defendant argues that the evidence is insufficient to sustain a finding that plaintiff suffered a serious injury within the meaning of Insurance Law § 5102 (d). In any event, he contends, the issue should have been submitted to the jury as a question of fact.

The Court is required to review the evidence in the light most favorable to the party prevailing at trial (*Perez v Rousseau*, 190 AD2d 1040, 1040-1041), and the verdict should not be set aside unless it could not have been reached upon any fair interpretation of the evidence or unless the verdict is not one that reasonable persons could have rendered after being presented with conflicting evidence (*see, Cohen v Hallmark Cards*, 45 NY2d 493, 498-499). Testimony by plaintiff's treating physician as well as portions of the testimony of defendant's experts support the finding that plaintiff's complaints of pain and permanent consequential limitations are supported by an objective medical basis (*Stanavich v Pakenas*, 190 AD2d 184, 187, *lv denied* 82 NY2d 659; *Countermine v Galka*, 189 AD2d 1043, 1045-1046). Contrary to the majority, I perceive the evidence to be more than adequate to support the jury's finding that plaintiff's injuries were the consequence of trauma sustained when the automobile driven by defendant's decedent struck the rear of plaintiff's parked vehicle.

Implicit in the jury's award of $700,000 in damages is the finding that plaintiff's injuries are serious. The jury returned a special verdict that defendant's decedent's negligence was "a substantial factor in causing the plaintiff's injuries", which ultimately required that he undergo surgery, some three years after the accident, for the removal of two intravertebral disks. It is simply not plausible to suggest that the jurors considered plaintiff's injury to be anything but serious, as that term is defined in the Insurance Law. There is nothing to suggest that the outcome of this case would have been any different had the question been directly submitted to the trier of fact (*Barracato v Camp Bauman Buses*, 217 AD2d 677; *Catalan v Empire Stor. Warehouse*, 213 AD2d 366, 367).

Defendant also argues that the court abused its discretion in precluding introduction of surveillance videotapes pursuant to CPLR 3101 (i), which provides: "In addition to any other matter which may be subject to disclosure, there shall be full disclosure of any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, involving [the person subject to disclosure]. There shall be disclosure of all portions of such material, including out-takes, rather than only those portions a party intends to use." This subdivision has been described as "vehement" in its requirement for disclosure of material obtained by means of surveillance (Siegel, 1993 Supp Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:50, 1998 Pocket Part, at 21). It is clear that the Legislature, in enacting CPLR 3101 (i), went well beyond the Court of Appeals' decision in *DiMichel v South Buffalo Ry. Co.* (80 NY2d 184) to mandate production of not only such visual material as is to be used at trial by the defense, but also out-takes and, as pertinent here, "audio tapes, including transcripts or memoranda thereof, involving" the plaintiff. The destruction of the contemporaneous audiotapes containing notes of the video surveillance conducted by defendant constitutes an explicit violation of the disclosure provision. Thus, I am unable to conclude that Supreme Court improvidently exercised its discretion in excluding the visual evidence.

Accordingly, the judgment should be affirmed.