■ MARCOS A. PARRENO, Respondent, v JUMBO TRUCKING, INC., et al., Appellants. [836 NYS2d 593]—

Judgment, Supreme Court, Bronx County (George D. Salerno, J.), entered on or about December 9, 2005, which, after a jury trial, awarded plaintiff damages in the principal sum of $100,000, unanimously reversed, on the law, without costs, the judgment vacated and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff alleges that he sustained injuries to his neck and back on August 2, 2000, when the car in which he was riding was rear-ended by a heavy truck owned by defendant Jumbo Trucking and driven by the individual defendant. Plaintiff testified at trial that after the accident, he experienced pain in his neck and back and was taken to the hospital, where he had x rays taken, was given medication and released. For the next five months, he received physical therapy including chiropractic

care, until the treatment was discontinued because the facility was not being paid.

Because of persistent pain, plaintiff saw an orthopedist, Dr. Jeffrey Kaplan, who examined him and ultimately diagnosed a herniated cervical disc, a bulging lumbar disc, cervical and lumbar straightening, cervical and lumbar muscle spasm with trigger points, and cervical and lumbar radiculopathy. When plaintiff's symptoms persisted, Dr. Kaplan took the "next step" by treating him with a series of steroid injections, but they only provided temporary relief. Plaintiff testified that his pain continues, making it difficult to turn his neck or bend forward or turn side to side. He cannot take out the garbage unassisted and his pain has caused him to develop a temper, leading to marital problems. His injuries required him to reduce his work schedule as an inspector of damaged furniture, although he only missed three or four days of work. Plaintiff testified that he had none of these physical or mood problems prior to the August 2000 accident.

Dr. Kaplan testified that he treated plaintiff for neck and back injuries on seven occasions over a $2^{1}/_{2}$ year period, between January 2001 and May 2003. During the initial physical examination, Dr. Kaplan performed various tests and asked plaintiff to perform certain maneuvers to determine his condition. His examination revealed four findings: a 30% limitation in the range of motion in plaintiff's neck (cervical spine), multiple trigger points of muscular spasm in his neck and shoulder girdle, spasm and tightness of the lower back (lumbar spine), and pain in the lower back and legs during a straight leg raising test at 70 degrees, whereas the normal is 90 degrees. Dr. Kaplan identified only the findings related to muscle spasm as being objective findings, which means that the test results are "beyond the control of the patient." Dr. Kaplan further opined that because plaintiff had indicated he had no problems with his neck and back prior to the accident, these injuries were causally related to the accident.

Dr. Kaplan further testified that because conservative treatment did not alleviate plaintiff's pain, he initiated a course of steroid injections in the trigger points of muscle spasm. However, such injections provided only temporary relief and he discontinued this treatment because of the risks posed by multiple steroid injections. In Dr. Kaplan's opinion, the return of the muscle spasms was an indication of an ongoing problem with the neck and lower back, causing the limited ranges of motion. Finally, in light of the fact that plaintiff was still feeling limitations and pain five years after the accident, the doctor

gave his opinion that the injuries were both "significant" and "permanent."

Defendants offered two medical witnesses on their case. Dr. Audrey Eisenstadt, a radiologist, examined the MRI films of plaintiff's cervical and lumbar regions of the spine. As to the lumbar MRI, she found no evidence of traumatic change, no straightening of the lumbar spine and no bulging disc. Regarding the cervical spine, Dr. Eisenstadt found the MRI film "blurry," but found no signs of trauma or disc herniation. She acknowledged that the MRI showed "some straightening" of the cervical spine, and that such straightening could be caused by muscle spasm, but in this case she believed it was the result of patient movement.

Defendants' second witness, Dr. Jerrold Gorsky, examined plaintiff for five minutes and determined "some limitation" in his head and neck, but found "normal" results for the straight leg raising test, which indicated no herniated disc. Plaintiff could bend at the waist and bring his fingertips below his knees "without difficulty." Accordingly, Dr. Gorsky concluded that plaintiff had intermittent complaints of neck and back pain that were consistent with his age and occupation, and that there were no objective findings to suggest that the accident caused any impairment, permanency or disability.

Defendants conceded liability after plaintiff's testimony, but at the close of the evidence they moved for a directed verdict on the grounds that plaintiff's evidence had failed to establish causation and failed to establish a threshold injury under the Insurance Law. The court denied the motion with respect to the issue of causation, but reserved decision on the threshold injury question.

The jury returned a split verdict, finding that plaintiff had failed to establish "a permanent consequential limitation of use of a body organ or member," but that he did sustain a "significant loss of use of a body function or member." The jury awarded plaintiff $50,000 for past pain and suffering and $50,000 for future pain and suffering over 24 years. The jury awarded nothing for future medical expenses. After the verdict, the court denied all motions for which decision had been reserved.

On appeal, defendants argue that because plaintiff's evidence failed to establish a significant limitation of a body function or system, the trial court erred in failing either to direct a verdict in their favor (CPLR 4401) or to grant judgment to defendants notwithstanding the verdict (CPLR 4404). Alternatively, they argue that the jury's verdict was against the weight of the evi-

dence. As we agree with defendants that plaintiff failed to establish a serious injury as a matter of law, we reverse and dismiss the complaint.*

Insurance Law § 5102 (d) defines "serious injury" to include "a personal injury which results in . . . significant limitation of use of a body function or system." Although the existence of a serious injury is often a jury question, "the issue is one for the court, in the first instance where it is properly raised, to determine whether the plaintiff has established a prima facie case of sustaining serious injury" (*Licari v Elliott*, 57 NY2d 230, 237 [1982]). Thus, "[i]f it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of [§ 5102 (d)] of the Insurance Law, then plaintiff has no claim to assert and there is nothing for the jury to decide" (*id.* at 238).

The determination of whether a limitation of use or function is significant "relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part" (*Dufel v Green*, 84 NY2d 795, 798 [1995]). In order to prove the extent or degree of physical limitation, a plaintiff may rely on an expert's designation of a numeric percentage of a plaintiff's loss of range of motion or a qualitative assessment of the plaintiff's condition (*Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 350 [2002]). Both the quantitative and qualitative assessments must have an objective basis (*see id.* [qualitative assessment may suffice, provided that evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body function or system]; *Taylor v Terrigno*, 27 AD3d 316 [2006] [complaint dismissed where expert did not identify the objective tests used in deriving measurements of loss of range of motion]).

Viewing the trial evidence in a light most favorable to the plaintiff, as we must, his medical evidence failed to establish a prima facie case of serious injury under either a quantitative or qualitative analysis. With respect to the quantitative findings, we note that although Dr. Kaplan testified to a 30% loss of range of motion of the neck, and further found that the results of plaintiff's straight leg raising test yielded a 20 degree difference from the normal result, any fair reading of the record demonstrates that these numerical restrictions on range of motion were premised exclusively on plaintiff's subjective indications of

---

\* In light of our determination to dismiss the complaint, it is unnecessary to address defendants' additional arguments concerning the excessiveness of the damages and the impropriety of plaintiff's summation.

pain. Indeed, plaintiff's doctor candidly admitted that the results of the straight leg raising test will depend on the patient's assertions of pain, rather than a verifiable inability to raise one's leg more than seventy degrees. Accordingly, the failure of plaintiff's medical expert to demonstrate the objective tests performed to determine the loss of range of motion renders these numerical findings insufficient to demonstrate serious injury (*see Rivera v Benaroti*, 29 AD3d 340, 342 [2006]; *Taylor v Terrigno*, 27 AD3d 316 [2006], *supra*; *Nagbe v Minigreen Hacking Group*, 22 AD3d 326, 327 [2005]; *Nelson v Amicizia*, 21 AD3d 1015 [2005]).

Although plaintiff's expert did identify some objective evidence of plaintiff's injury—a herniated disc, a bulging disc and multiple points of muscular spasm—this evidence alone was insufficient to establish serious injury, in the absence of objective medical evidence showing the extent or degree of the limitations resulting from these specific injuries and their duration (*see Newton v Drayton*, 305 AD2d 303 [2003]; *Rangel-Vargas v Vurchio*, 289 AD2d 92 [2001]; *Noble v Ackerman*, 252 AD2d 392, 394 [1998]).

Nor did plaintiff establish a significant limitation based upon a qualitative assessment of his condition. The record discloses that at the end of his testimony, Dr. Kaplan was asked what was the "qualitative difference" between plaintiff's injured cervical and lumbar spine and that of a "normal healthy spine." After Dr. Kaplan stated that he did not understand the question, which plaintiff's counsel rephrased, the doctor stated that "he certainly has pain with activities, acquires pain, complained of pain with activities, complained of pain with weather changes. He has muscular spasm that limits his motion, worse at times than other times. And, so, he has a limited function, certainly." Manifestly, this vague testimony fails to compare plaintiff's limitations to the normal function, purpose and use of the cervical and lumbar regions of his spine (*Toure*, 98 NY2d at 350; *Dufel*, 84 NY2d at 798). Likewise, Dr. Kaplan's assertion that plaintiff's injuries were "significant" was conclusory and tailored to meet the statutory and decisional requirements (*Ceruti v Abernathy*, 285 AD2d 386 [2001]; *see also Lopez v Senatore*, 65 NY2d 1017, 1019 [1985]). Concur—Tom, J.P., Sullivan, Nardelli, Gonzalez and Malone, JJ.