| |
|---|
| **Huger v Perrotta** |
| 2025 NY Slip Op 30790(U) |
| March 11, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 150675/2020 |
| Judge: James G. Clynes |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. JAMES G. CLYNES** | **PART** 22 |
| | *Justice* | |

-----------------------------------------------------------------------------X

ANTHONY JEROME HUGER,

Plaintiff,

- v -

JOSEPH PERROTTA, ARI FLEET LT., AERIE PHARMACEUTICALS, INC., MAURICIO ARANGUREN, JOSE CABRERA, REYNALDO BENAVIDES, RH, FGO DELIVERS LLC, FGO LOGISTICS LLC, REVA TRUCKING LLC

Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 150675/2020 |
| **MOTION DATE** | 05/23/2024, 05/24/2024, 05/24/2024 |
| **MOTION SEQ. NO.** | 001 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 147, 151, 154, 157, 169, 170, 171, 172, 173, 175, 180

were read on this motion to/for       JUDGMENT - SUMMARY     .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 148, 152, 155, 158, 176, 179

were read on this motion to/for       JUDGMENT - SUMMARY     .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 145, 146, 149, 153, 156, 159, 160, 161, 162, 163, 164, 165, 166, 177, 178, 181

were read on this motion to/for       JUDGMENT - SUMMARY     .

Motion sequence numbers 001, 002, and 003 are consolidated for disposition.

Plaintiff Anthony Jerome Huger (plaintiff) seeks recovery for personal injuries sustained as a result of a September 4, 2019 motor vehicle accident involving multiple vehicles which took place on the upper level of the George Washington Bridge. Plaintiff is claiming injuries to multiple parts of his body, including his cervical spine, thoracic spine, lumbar spine, and right knee.

In motion sequence 001, defendant Mauricio Aranguren (Aranguren) moves, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint of plaintiff and an order granting conditional summary judgment as to common law indemnification and contribution.

150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH
Motion No.  001 002 003

Page 1 of 18

[* 1]

In motion sequence 002, defendant Restoration Hardware, Inc. i/s/h/a RH (Restoration Hardware), moves, pursuant to CPLR 3212, for an order granting summary judgment and dismissing any cross claims.

In motion sequence 003, defendants Jose Cabrera (Cabrera), Reynaldo Benavides (Benavides), FGO Delievers LLC d/b/a FGO Logistics LLC, s/h/a FGO Delivers LLC and FGO Logistics LLC (FGO), and Reva Trucking, LLC (Reva), move, pursuant to CPLR 3212, for an order granting summary judgment and dismissing the complaint on the grounds that plaintiff fails to meet the "serious injury" threshold requirement mandated by New York State Insurance Law §§ 5102 (d) and 5104 (a).

**Plaintiff's EBT**

Plaintiff testified that on September 4, 2019, between 8:30 a.m. and 9:30 a.m., he was driving his motor vehicle, a BMW, from his home in New Jersey across the upper level of the George Washington Bridge towards New York City. He was in the right lane and almost across the bridge when he was involved in an accident. He maintains that the accident occurred when the traffic was moving slow. He testified that "traffic was moving a little bit faster and it got slow again, came to like a little stop, three or four seconds passed and that's when the accident happened" (NYSCEF DOC. NO. 122, at 31).

Plaintiff recalls looking at the vehicle in front of him, when he felt two to three impacts The first impact was hard, while the second and third impacts were of medium strength. Plaintiff was wearing a seatbelt and the airbags were not deployed. He became aware that there was more than one car involved in this accident due to the impacts and observing a line of cars which collided.

When the police arrived at the scene, plaintiff informed the officer that his vehicle was stopped in traffic when he was struck by another vehicle, that he was in pain, and that he needed to go to the hospital.

**Joseph Perrotta's EBT**

On the date of plaintiff's accident, Perrotta was driving a vehicle owned by Aeerie Pharmaceuticals traveling across the George Washington bridge in the right lane. He was at a stop and was located behind a black BMW and believes that he was four or five feet behind the vehicle. A BMW SUV was located behind him, and a box truck was behind that vehicle. Perrotta recalls being stopped for about ten seconds when he heard a collision of cars behind him. He then felt

**150675/2020 HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No. 001 002 003**

Page 2 of 18

one impact from the center rear of his vehicle. Perrotta's vehicle was struck in the rear. His vehicle proceeded to be pushed into the vehicle in front of him.

**Aranguren's EBT**

Aranguren testified that he was involved in an accident on September 4, 2019, on the George Washington Bridge when he was rear ended by a truck. He testified that the front bumper of the truck came in contact with the rear bumper of his vehicle. At the time of his accident, Aranguren's vehicle was completely stopped when he saw a truck coming toward his vehicle in the rear-view mirror. He recalls seeing three people in the truck. One passenger appeared to brace for an impact, another passenger recognized that there was going to be an accident and waved his hands to advise the driver, and the driver proceeded to turn to the left to avoid the accident. He believes that the truck was traveling between 10 to 20 miles per hour, before hitting his vehicle with a hard impact.

Aranguren recalls hitting the vehicle in front of him with a heavy impact, and that vehicle proceeded to strike the car in front of it. He does not believe that the car in front of that car was involved in a prior accident. The truck came in to contact with his vehicle one time. He maintains that he did not stop suddenly.

**Cabrera's EBT**

Cabrera testified that he was driving a truck to Manhattan on the George Washington Bridge on the date of the accident. His truck was owned by his brother, Reynaldo Benavides, who owns a furniture delivery service called "Reva". He was making a delivery for Restoration Hardware and had arrived in the morning at the company warehouse. There were nine or ten deliveries in the truck and Restoration Hardware provided a tablet with all of the information. Cabrera was wearing a gray shirt that had a logo for Restoration Hardware. Cabrera did not know if the dispatcher worked for Restoration Hardware. He maintains that he did not work for Restoration Hardware, but that he made deliveries for the company.

Cabrera picked up the truck from Secaucus. He believes that he was covering for an absent person on that day and was driving behind someone on the George Washington Bridge when he struck the vehicle in front of him. He did not know if it was stopped when his truck made contact. He recalls that the traffic stopped all of a sudden and that he applied his brakes. He was traveling at 35 miles per hour. He testified that maybe the vehicle in front of him hit the vehicle in front of it. He believes the impact was very light.

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

Page 3 of 18

Cabrera testified that he told the police:

"I told them that the car I had in front of me, the van stopped out of the blue, that I tried to apply the brakes and I didn't have the time. I also considered going all the way to the left and I didn't want to because I didn't want to cause a double accident since there was another car on the left lane. And I didn't want to push that car out of the lane."

(NYSCEF DOC. NO. 86, at 34).

Cabrera reviewed a picture of the accident scene and saw the black car which he hit touching the car in front of it. He did not see the car in that position prior to the accident. He believes that there was one impact.

**Benavides' EBT**

Benavides testified that he owned Reva and the box truck which Cabrera was operating. Cabrera was his brother who was performing a favor by making the deliveries. Cabrera was delivering furniture with two other workers on behalf of Restoration Hardware and was wearing a Restoration Hardware uniform. Benavides testified that the truck went to a warehouse in New Jersey, was loaded up with Restoration Hardware furniture, and then was heading towards New York City across the George Washington Bridge when the accident occurred. He did not have a written contract with Restoration Hardware.

In September of 2019, FGO would tell Benavides what customers they were to deliver to and the time frame. FGO would answer to Restoration Hardware and would pay Benavides. He recalls that his brother told him that regarding the accident "[t]hat supposedly it was two or three cars, and that one hit the other. And that he wasn't sure how, but he went and he hit the one from behind" (NYSCEF DOC. NO. 88, at 38). The truck Cabrera was driving states on it "Reva Trucking, DOT, the NC" and does not include Restoration Hardware.

**Joe Hansen's EBT**

Joe Hansen (Hansen) testified that he is employed by FGO and works as the Vice-President for Risk Management. FGO brokers delivery deals between clients and independent contractors. Restoration Hardware was a client in 2019. Hansen recalls hearing about plaintiff's accident when the lawsuit was filed and learning that there were multiple vehicles involved in an accident which involved Reva, an independent contractor. FGO would broker the deal between Restoration Hardware and independent contractors. Restoration Hardware would sell their products and

150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH
Motion No.  001 002 003

Page 4 of 18

schedule the deliveries which was handed over to FGO who would then distribute the delivery to independent contractors.

Restoration Hardware and the customer would determine the delivery date. The product would be picked up at a Restoration Hardware warehouse which would determine what product goes on the truck. The contractor would determine the route for the delivery, while Restoration Hardware would provide the time frame. The delivery agent had to be an authorized courier, wear Restoration Hardware uniforms, and sometimes hats, as well as booties. FGO did not provide training or instruction about assembly of the products from Restoration Hardware. Hansen did not know of any training which Restoration Hardware provided to independent contractors.

## Summary Judgment standard

"The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (*Dallas-Stephenson v Waisman*, 39 AD3d 303, 306 [1st Dept 2007]). "Once the prima facie showing has been made, the party opposing a motion for summary judgment bears the burden of produc[ing] evidentiary proof in admissible form sufficient to require a trial of material questions of fact" (*People v Grasso*, 50 AD3d 535, 545 [1st Dept 2008] [internal quotation marks and citation omitted]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Grossman v Amalgamated Hous. Corp.*, 298 AD2d 224, 226 [1st Dept 2002]).

## Motion sequence 001

Aranguren contends that summary judgment must be granted in his favor dismissing the complaint of plaintiff. He argues that based upon the evidence, his vehicle was struck in the rear by a box truck owned by Benavides and driven by Cabrera. He maintains that there is no evidence to indicate that he bears any liability for the occurrence of plaintiff's accident. Aranguren specifically contends that after the box truck rear-ended his vehicle, his vehicle moved forward and hit the vehicle in front, and that after he struck that vehicle, it proceeded to move forward and hit another vehicle. He maintains that as stated in the police report, plaintiff's vehicle (vehicle 1) was struck from behind by Perrotta's vehicle (vehicle 2). Perrotta's vehicle (vehicle 2) was struck from behind by Aranguren's vehicle (vehicle 3). Aranguren's vehicle (vehicle 3) was struck from behind by the box truck (vehicle 4).

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 5 of 18**

Aranguren argues that he saw the large white box truck which rear ended him only seconds before the impact. He maintains that his vehicle was in a full stop when it was rear-ended, and just prior to impact, he saw the truck coming at a fast speed, saw three people sitting in the front seat of the truck, and then saw the individual sitting in the middle of the three in the truck try to get the driver's attention. He maintains that because Aranguren's vehicle was a stopped vehicle that was rear-ended, a prima facie case of negligence was created with respect to the box truck. Plaintiff does not oppose Aranguren's motion for summary judgment. Furthermore, there is no evidence presented that Aranguren was negligent. The testimony supports that the impact was started by the box truck which then caused a chain reaction. Even if Aranguren stopped short, the driver of the box truck, which started the chain of impacts, provided no explanation as to why he failed to maintain a safe distance between his vehicle and Aranguren's vehicle (*see Chame v Kronen,* 150 AD3d 622, 622 [1st Dept 2017] [even if the vehicle in front did stop short, defendant failed to provide evidence that he maintained a safe distance between his vehicle and plaintiff's vehicle]; *Tejeda v Aifa,* 134 AD3d 549, 550 [1st Dept 2015] [holding testimony that a vehicle "stopped short is insufficient by itself to raise an issue of fact as to . . . negligence; he provided no explanation as to why he did not maintain a safe distance between his vehicle and (the) . . . vehicle in front of him"]; *Dattilo v Best Transp. Inc.,* 79 AD3d 432, 433 [1st Dept 2010] [holding "A rear-end collision with a vehicle that is slowing down establishes a prima facie case of negligence on the part of the driver of the rear vehicle, and imposes a duty on him to come forward with an adequate nonnegligent explanation for the accident"]). Therefore, based upon a review of the record, any allegation that Aranguren was negligent must be dismissed.

Furthermore, any cross-claims asserted by the codefendants as against Aranguren should be dismissed. Neither plaintiff nor co-defendants establish that common law indemnification, contractual indemnification, or contribution would be applicable as to Aranguren. Finally, the court notes that Aranguren and Restoration Hardware entered into a stipulation dated August 28, 2024, which states that Aranguren withdraws the portion of his motion for summary judgment which seeks conditional summary judgment for common law indemnification.

Therefore, as Aranguren meets his burden and demonstrates that no genuine issue of fact exists as to his alleged negligence and that he did not cause the chain reaction which impacted plaintiff's vehicle, and as plaintiff fails to meet his burden to demonstrate otherwise, Aranguren's motion for summary judgement must be granted.

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No. 001 002 003**

Page 6 of 18

6 of 18

## Cross motion

Perrotta, Ari Fleet LT, and Aerie Pharmaceuticals, Inc. (the Perrotta defendants), cross-move, permitting the late filing of a summary judgment motion and dismissing plaintiff's complaint, and/or claims of common law indemnification as against the co-defendants. The Perrotta defendants argue that the court should allow the late filing of this summary judgment motion as it is based on one of the same grounds as the motion of the co-defendants. They argue that the cause of the accident was Cabrera's truck, that there is no prejudice to plaintiff or any of the defendants, and that if summary judgment is granted to Aranguren, then their application for such relief should be granted as well.

Defendants Cabrera, Benavides, FGO and Reva (collectively "the Cabrera defendants") oppose this motion and contend that the Perrotta defendants' motion is mislabeled as a cross-motion because it seeks affirmative relief against non-movants, including plaintiff, and is therefore improper and in violation of CPLR § 2215. They argue that the Case Scheduling Order in this action requires that dispositive motions be filed within 60 days of the filing of the Note of Issue. They maintain that plaintiff filed the Note of Issue on March 25, 2024, and therefore, all motions for summary judgment in this action were to be filed on or before May 24, 2024. The Cabrera defendants contend that because the Perrotta defendants did not file their cross-motion until June 18, 2024, and they are not seeking the same relief as Aranguren, specifically summary judgment on liability in favor of Aranguren, the cross-motion should be denied as untimely. They further argue that because plaintiff testified that there were three or four impacts, issues of fact exist regarding whether any of the vehicles that were in front of Cabrera, namely the Aranguren vehicle or the Perrotta vehicle, had any impacts before the Cabrera truck impacted the rear of the Aranguren vehicle.

It is undisputed that the Perrotta defendants did not file the motion for summary judgment within the required 60 days from the filing of the Note of Issue as stated in the Case Scheduling Order. Furthermore, the cross-moving papers include no excuse other than law office failure for missing the deadline to timely file their motion. Accordingly, the Perrotta defendants' cross motion for summary judgment must be denied (*See Cullity v Posner*, 143 AD3d 513, 514 [1st Dept 2016] [holding "[t]he motion should have been denied as untimely. The motion court's rules required dispositive motions to be filed within 60 days of the filing of a note of issue. Defendant filed the motion papers nine days after the time to do so had expired, rendering the motion untimely

**150675/2020 HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No. 001 002 003**

**Page 7 of 18**

7 of 18

. . . . [d]efendants' failure to address the missed filing deadline or offer, let alone show, good cause for the delay in filing, is fatal to their motion"]).

**Motion sequence 002**

Restoration Hardware moves, pursuant to CPLR 3212, for an order granting summary judgment and to dismiss any cross claims. Restoration Hardware contends that there is no negligence on its part as it did not own any vehicles involved in the subject accident. It maintains that it did not employ any drivers that were involved in this accident, did not have control over the truck or the driver who was performing Restoration Hardware furniture delivery at the time of the subject accident, and had no relationship with either Reva, the entity that owned the truck involved in this accident, or Cabrera, the driver of the truck.

Restoration Hardware contends that plaintiff cannot point to any evidence that would give rise to a material issue of fact, which would require a trial, and that there exists no factual basis for holding it liable. Restoration Hardware maintains that the testimony establishes that Cabrera, with whom it has no contractual relationship, was engaged by Reva, and received instructions only from that company. It argues that therefore, there is no relationship, contractual or otherwise, upon which a finding of vicarious liability against Restoration Hardware for the conduct of Cabrera might be predicated.

Restoration Hardware also contends that it did not exercise enough control over FGO or Reva to raise a triable issue of fact as to whether they should be accountable for Reva's employee. Restoration Hardware argues it was not involved in the hiring of Reva, nor had any control over Reva or its employees. Pursuant to the agreement between FGO and Restoration Hardware, FGO was responsible for the hiring, recordkeeping, performing background checks, selecting the proper personnel to perform the services, paying wages, complying with employment laws, maintaining policies, providing training, maintaining workers' compensation insurance, supervising, and providing performance management duties.

In opposition, plaintiff contends that Restoration Hardware's control over the means used to achieve the delivery of its goods to customers was more than incidental and significant. Plaintiff contends that according to Hansen, the FGO representative, Restoration Hardware dictated the manner in which the deliveries were made, determined what products go on what routes, generated the manifests and determined the timing of the delivery.

**150675/2020   HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 8 of 18**

8 of 18

[* 8]

Plaintiff argues that Restoration Hardware also demanded, pursuant to its Standard Operating Procedures, that shippers follow its rules when making deliveries, specifically that they needed to wear white gloves, booties and a Restoration Hardware monogramed uniform; they must call within 30 minutes of a delivery; they cannot offer the customer any other services, nor were they permitted to assist in moving non-Restoration Hardware furniture. He also contends that Restoration Hardware provided the shippers with tablets, access to its internal order management software, and required the shippers to access the software program and "close out" the delivery, thereby informing Restoration Hardware that the delivery was made.

The doctrine of respondent superior renders an employer vicariously liable for the negligence of its employee acting within the scope of the employment. (*See Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999]). However, "an employer who hires an independent contractor is not liable for the independent contractor's negligent acts" (*Rosenberg v Equitable Life Assur. Socy. of U.S.,* 79 NY2d 663, 668 [1992]). "The determination of whether an employer-employee relationship exists turns on whether the alleged employer exercises control over the results produced, or the means used to achieve the results. Control over the means is the more important consideration" (*Raja v Big Geyser, Inc.,* 144 AD3d 1123, 1124 [2d Dept 2016]). The "determination of whether someone is an independent contractor is a fact-specific question" (*Carlson v American Intl. Group, Inc.*, 30 NY3d 288, 301 [2017]). "Whether an actor is an independent contractor or an employee for purposes of tort liability is usually a factual issue for the jury" (*Fiscina v Boro Rug & Carpet Warehouse Corp.*, 195 AD3d 998, 999 [2d Dept 2021] [internal quotation marks and citation omitted]; *see also Cross v Supersonic Motor Messenger Courier, Inc.*, 140 AD3d 503, 504 [1st Dept 2016] (a factual issue was raised where, although a delivery driver signed an independent contractor contract, he was required to maintain insurance, a company dispatcher controlled the delivery process, the driver used company forms, wore a company shirt and the truck included a company logo]).

Here, a question of fact exists as to whether the control over the shipping by Restoration Hardware was incidental or significant. As plaintiff discussed, Restoration Hardware required that shippers follow specific procedures and rules when making deliveries, wear uniforms with their logo, utilize specific technology including a provided computer tablet, access its internal order management software, and required shippers to "close out" the delivery process utilizing this system informing Restoration Hardware when the delivery was completed.

**150675/2020   HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 9 of 18**

Therefore, because the record presents a question of fact regarding the nature of the relationship between the Restoration Hardware and the individual drivers and its level of control and oversight over the driver, summary judgment dismissing the complaint against the company must be denied (*See Edwards v Rosario*, 166 AD3d 453, 454 [1st Dept 2018] [a factual issue raised was where delivery driver maintained insurance dictated by company, utilized company forms and wore company uniform with logo]; *Devlin v City of New York*, 254 AD2d 16, 17 [1st Dept 2011] [holding a factor to be considered as to whether vicarious liability is appropriate is whether defendant held itself out to the public as being the employer of its drivers]).

**Motion sequence 003**

Defendants Cabrera, Benavides, FGO, and Reva, move, pursuant to CPLR 3212, for an order granting summary judgment dismissing the complaint on the grounds that plaintiff fails to meet the serious injury threshold requirement mandated by New York State Insurance Law §§ 5102 (d) and 5104 (a). Defendants argue that plaintiff suffered, at most, minor "soft tissue" injuries as a result of his accident. They argue that these injuries do not qualify as a "serious injury" under any of the categories of the "no-fault" upon which plaintiff relies.

A party seeking damages for pain and suffering arising out of a motor vehicle accident must establish that he or she has sustained at least one of the categories of "serious injury" as set forth in Insurance Law § 5102 (d). According to Insurance Law § 5102 (d), a serious injury:

"means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."

It is indisputable that four of the nine categories of serious physical injuries discussed by Insurance Law § 5102 (d) are not applicable herein as there is no allegation of death, dismemberment, fracture or a loss of a fetus. Therefore, the court must determine if the plaintiff's injuries constitute either: (1) permanent loss of use of a body organ, member, function or system; (2) a permanent consequential limitation of use of a body function or system; (3) a significant limitation of use of a body function or system; (4) a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 10 of 18**

10 of 18

[* 10]

material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment; or 5) a significant disfigurement.

With regards to plaintiff's allegation of a significant disfigurement due to the scar on his back from lumbar surgery, defendants demonstrate that plaintiff has failed to allege this ground in his bill of particulars (*See Noor v Fera*, 200 AD3d 1366, 1369 [3d Dept 2021] [holding plaintiff "did not allege a serious injury under the significant disfigurement category. Nor did plaintiff move to amend her bill of particulars to include such allegation. Absent an amendment to the bill of particulars, the fact that defendants — briefly and in an abundance of caution — raised the issue of significant disfigurement in their motion for summary judgment does not inject the issue into the case. Accordingly, Supreme Court properly declined to address plaintiff's alleged claim of serious injury under the significant disfigurement category"]). Therefore, the court declines to address plaintiff's alleged claim under the significant disfigurement category.

Furthermore, plaintiff provides unauthenticated photographs of the alleged disfigurement in his opposition (*See Rivera v GT Acquisition 1 Corp.*, 72 AD3d 525, 526 [1st Dept 2010] [holding that the "court properly disregarded the uncertified police report and unauthenticated photographs as they constituted inadmissible hearsay"]).

Defendants argue that plaintiff's claims of serious injury fail because he sustained no causally-related, objective injury as required by the Insurance Law and that an injury must be objectively verified by medical evidence in either qualitative or quantitative terms to satisfy the serious injury threshold. Defendants argue that nowhere in plaintiff's medical records or deposition is it alleged that they have lost the total use of any part of her body.

"In determining a motion for summary judgment where the issue is whether plaintiff has sustained a serious injury defined by Insurance Law § 5102 (d), the defendant bears the initial burden to present competent evidence that the plaintiff has no cause of action" (*Brown v Achy*, 9 AD3d 30, 31 [1st Dept 2004]). Here, defendants have met their prima facie by presenting the reports of two physicians, Dr. Arnold T. Berman and Dr. Nicholas H. Post, who conducted independent medical examinations. In a report dated June 21, 2022, following an independent orthopedic evaluation, Dr. Berman concluded and affirmed that regarding the plaintiff's right knee that the MRI report indicated a preexisting intrasubstance tear of lateral meniscus and arthroscopic surgery operative showing preexisting loose bodies indicating degenerative joint disease and that

**150675/2020 HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No. 001 002 003**

**Page 11 of 18**

11 of 18

with regard to plaintiff's cervical, thoracic and lumbar spine, the MRI findings could not be caused by the subject accident. He further states that "Mr. Huger can participate in all activities of daily living. He may continue to work full time without restrictions. Mr. Huger did not sustain any permanent injury and has no disability" (NYSCEF DOC. NO. 106).

In a report dated May 3, 2022 following an independent neurological examination, Dr. Post concluded and affirmed that plaintiff's "ongoing subjective pain complaints do not constitute evidence of residual neurological injury or permanent neurological impairment. Based upon available information, he remains capable of working and performing his activities of daily living in an unrestricted capacity" (NYSCEF DOC. NO. 107).

In opposition, plaintiff argues that sufficient proof exists to demonstrate that plaintiff sustained a "significant" or "permanent consequential" "serious injury."

Plaintiff argues that regarding his knee, an affirmed report from Dr. Christine Corradino dated January 21, 2020 states that he suffered a "meniscus tear" because of the subject accident, and notes that following the accident he claimed knee pain, immediately sought treatment, and followed up with Dr. Richard Seldes, an orthopedist, who recommended physical therapy. Plaintiff maintains that Dr. Corradino noted that, after failure of conservative care and an MRI which highlighted a meniscus tear, and attempted injections which did not help, plaintiff underwent an arthroscopy on December 30, 2019.

Plaintiff contends that Dr. Corradino noted diminished range of motion of his knee for flexion at 85 degrees, concluding that normal would have been 130, noted patella grind, and opined that the right knee was "resolving." Plaintiff maintains that Dr. Corradino reviewed the MRI, and confirmed a meniscus tear and noted that in her opinion, the intrasubstance tear of the body of the meniscus, which resulted in surgical treatment, was due to the subject accident.

Plaintiff discusses a "peer review" dated February 4, 2020, of Dr. Robert Christafaro, an orthopedist, which states that the physical examination of plaintiff's right knee revealed decreased range of motion, swelling, tenderness upon palpitation over the medial and lateral joint line, and positive McMurray sign. Dr. Christafaro further states that plaintiff was diagnosed with right knee lateral meniscus tear with continued pain and inflammation, that the MRI of the right knee revealed an intra substance tear of the body of the lateral meniscus with small knee joint effusion, that the MRI was evident of tear of the body of the lateral meniscus, and that he received cortisone injection

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 12 of 18**

12 of 18

to the right knee which did not provide sufficient relief to the claimant, concluding that the right knee arthroscopy was medically necessary.

Plaintiff also references an expert opinion of Dr. Gabriel Dassa, an orthopedist. Plaintiff notes that at an examination on June 12, 2024, Dr. Dassa noted swelling of his right knee with an antalgic gate, a circumference measurement 2 1/2 inches greater on the right than the left side, and limited range of motion on flexion (120/140). He observed tenderness on the right knee's patellofemoral joint with crepitus and a positive patellofemoral compression for the right knee. Dr. Dassa noted that the exam revealed restricted range of motion to the right knee and that the findings were consistent with persistent dysfunction to the right knee with traumatic arthritis. Dr. Dassa concluded that within a reasonable degree of medical certainty that the findings represent objective evidence of persistent orthopedic impairment to the right knee and it was caused by the subject accident. Dr. Dassa maintains that the injury was significant and permanent and that plaintiff has a high probability of needing right knee replacement surgery.

Plaintiff contends that a triable issue of fact also exists regarding the seriousness of his neck injury. He cites to a report dated February 13, 2020 by Dr. Isaiah Florence, a pain management specialist, which noted significant disability in the cervical spine. Range of motion tests noted that plaintiff's lateral bending left was 20 (normal range 45), lateral bending right was 20 (normal range 45) rotation left was 20 (normal range 80), and rotation right was 20 (normal range 80). Plaintiff notes that Dr. Florence considered plaintiff mildly disabled, and notes that he could work but was not allowed to perform activities that require strenuous physical labor. She recommended plaintiff undergo a cervical nerve block regimen.

Plaintiff maintains that on July 6, 2020, he sought treatment from Dr. Andrew Merola, complaining of significant cervical pain due to the subject accident. Dr. Merola measured significant loss of range of motion in the cervical spine as well as observed spasm and tenderness, and reviewed the cervical MRI which he concluded demonstrated a C5-C6 herniation. He maintains that a July 8, 2024 examination confirmed a significant neck injury, noting that the subject accident is the cause of permanent injuries sustained to plaintiff's neck.

Plaintiff contends that with regards to his lumbar injury, Dr. Corradino, in a report dated January 21, 2020, concluded that plaintiff has clinical findings of radiculopathy with weakened EHL and decreased sensation, which goes along with his MRI findings of a herniated disk at L4-5. Dr. Corradino recommended that because the physical therapy and injections were not helpful,

[* 13]

plaintiff should follow-up to discuss alternative treatment options of the lumbar spine. Plaintiff states that Dr. Corradino recommended he consider spinal surgery. She opined that the injury to plaintiff's lumbar spine was caused by the subject accident.

On July 6, 2020, plaintiff first sought treatment from Dr. Merola for his back pain, which he complained radiated into his lower extremity. Dr. Merola noted severe antalgic and kyphotic gait pattern, reversal of lordosis, and that plaintiff needed assistance getting on and off the exam table. He noted significant loss of range of motion in most lumbar planes.

Here, plaintiff's submissions in response to the respective motions, when viewed in their entirety, constitute objective evidence sufficient to raise a triable issue of fact as to serious injury which should be left for the determination of a jury (*See Brown v Achy,* 9 AD3d 30, 31 [1st Dept 2004]; *see also Toure v Avis Rent A Car Sys.,* 98 NY2d 345, 350 [2002]; *Cassagnol v Williamsburg Plaza Taxi,* 234 AD2d 208, 209 [1996]).

For example, following his examination of plaintiff, Dr. Merola specifically concludes that "[w]ithin a reasonable degree of medical certainty, the accident occurring on September 4, 2019 is the competent cause of injuries sustained to Mr. Huger's neck and low back requiring surgical intervention to the lumbar spine. Mr. Huger's injuries are permanent in nature" (NYSCEF DOC. NO. 165). Dr. Merola continues that plaintiff "will require continued orthopedic observational care and management visits approximately one to two times per year at a cost of $275 per visit for his neck and back. He will also require surgical intervention in the future in the form of revision lumbar surgery" (*Id.*).

Furthermore, Dr. Dassa specifically concluded in a report dated June 12, 2024, that:

"Regarding spinal complaints, I find it remarkable, at least concerning the lumbar complaints, the defendants' doctors would discuss causality or prognosis without first reviewing Dr. Merola's operative report, which reviewed, and which showed, among other things, 'a torn annulus with herniation at L4-L5'. That is a classic trauma induced injury. The MRI reports, such as the September 11, 2019 report of the lumbar is not indicative of degenerative changes. The report states the opposite - no stenosis or significant hypertrophy; And, again, he was working and the motor vehicle accident appears significant. I believe this motor vehicle accident is the cause of back complaints. Similarly, the motor vehicle accident appears to have contributed to Mr. Huger's cervical complaints. He claims he was asymptomatic prior to the motor vehicle accident and the cervical spine MRI is consistent as there is no indication of degenerative changes. Mr. Huger made spine complaints right away and was working prior to the motor vehicle accident without complaints. And all spinal x-rays show no degeneration."

(NYSCEF DOC. NO. 161).

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 14 of 18**

Dr. Dassa also corelated plaintiff's knee issues to the subject accident. He states that:

"I have read the IME reports from Dr. Berman and Dr. Post and I disagree with essentially all of their conclusions. First, with almost no explanation, Dr. Berman writes that Mr. Huger's right knee injury and complaints is pre-existing. Within a reasonable degree of medical certainty, I disagree . . . I note that a September 26, 2019, note from Vein Pain and Spine states upon exam that Mr. Huger had right knee pain upon active motion and was unable to squat or kneel, which would be consistent with motor vehicle accident casualty and not pre-existing where Mr. Huger says he worked without limitations. I note that the only degenerative changes of the knee that I saw are based on this accident and arose out of the last 4 years and now request a total knee replacement."

(*Id.*).

Dr. Merola and Dr. Dassa's findings conflict with the finding which the moving defendants utilize to support their motion. For example, Dr. Berman noted in his affirmation dated June 21, 2022, that:

"Spinal surgery of the lumbar spine was done in 2020; however no operative report was submitted for review. All findings on the MRI reports are chronic with no acute injury. The MRI report findings could not have been caused by this single motor vehicle accident. A CT scan done on 9/04/19 was done which was negative for fracture. The subjective complaints were not supported by any objective findings on the physical examination. There were no objective findings, no reflex changes and no sensory or motor loss, and no radiculopathy of the cervical and lumbar spine. There is no loss of bodily function."

(NYSCEF DOC. NO. 106).

Furthermore, Dr. Post, a neurologist, conducted an examination of plaintiff on May 3, 2022. Dr. Post states that:

"In conclusion, Mr. Huger's subjective pain complaints do not correspond the traumatic injury affecting his spinal column. Subsequent diagnostic imaging reports describe findings consistent with a degenerative process that is not attributable to the 9/4/2019 accident. The eventual October 2020 lumbar spinal surgery addressed a pre-existing degenerative condition. Mr. Huger's ongoing subjective pain complaints do not constitute evidence of residual neurological injury or permanent neurological impairment. Based upon available information, he remains capable of working and performing his activities of daily living in an unrestricted capacity."

(NYSCEF DOC. NO. 107).

The reports cited by the moving defendants clearly conflict with the findings referenced by Dr. Merola and Dr. Dassa regarding the cause, permanency, and severity of the alleged injuries. Therefore, the conflicting medical reports raise issues of fact which should be left for the

150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH
Motion No.  001 002 003

Page 15 of 18

determination of a jury. "Where conflicting medical evidence is offered on the issue of whether the plaintiff's injuries are permanent or significant, and varying inferences may be drawn therefrom, the question is one for the jury" (*Noble v Ackerman*, 252 AD2 392, 395 [1st Dept 1998]; *Johnson v Garcia*, 82 AD3d 561, 562 [1st Dept 2011] [holding that the differing opinions between physicians "as to whether plaintiff's symptoms were proximately caused by the accident or result from a pre-existing degenerative condition also raises triable issues of fact"]; *LaMasa v Bachman*, 56 AD3d 340, 340 [1st Dept 2008] ["the conflicting medical evidence and opinions of defendant's experts concerning the permanence and significance of plaintiff's injuries simply raised issues of fact for the jury"]).

Furthermore, "[o]n a motion for summary judgement the court is not to determine credibility, but whether there exists a factual issue, or if arguably there is a genuine issue of fact" (*SJ Capelin Associates, Inc. v Globe Mfg. Corp.*, 34 NY2d 338, 357 [1974]; *see also Cassagnol v Williamsburg Plaza Taxi*, 234 AD2d 209, 210 [1st Dept 1996] [holding "the conflicting affidavits submitted to the motion court presented a factual dispute regarding the extent of plaintiff's injury and that court properly recognized that it could not resolve this material factual question in the context of a summary judgment motion"]). Therefore, as such issues of fact exist as to the conflicting findings in the medical reports, the motion of defendants Cabrera, Benavides, FGO, and Reva must be denied.

As to plaintiff's 90/180 claim, defendants made a prima facie showing by pointing to plaintiff's deposition testimony in which he testified that he missed two weeks of work after the accident and three weeks of work after his surgery in December of 2019 due to his alleged injury (*See Mena v White City Car & Limo Inc.,* 117 AD3d 441, 441 [1st Dept 2014] ["Defendants met their burden as to the 90/180-day claim by relying on plaintiff's bill of particulars alleging that he was confined to bed for about one week, and his testimony that he was home from work for only five days]"). "[T]he ability to return to work may be said to support a legitimate inference that the plaintiff must have been able to perform at least most of his usual and customary daily activities" (*Correa v Saifuddin*, 95 AD3d 407, 409 [1st Dept 2012]).

Finally, although the moving defendants contend in their reply that there was a gap in plaintiff's treatment, such argument will not be addressed as it was raised for the first time on reply, and plaintiff has not had the opportunity to respond (*See Tadesse v Degnich*, 81 AD3d 570, 570 [1st Dept 2011] [holding "When dismissing the complaint as against appellants, the court

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

Page 16 of 18

improperly relied on the gap-in-treatment argument, which appellants raised for the first time in their reply papers"]).

**Cross motion**

Defendants Ari Fleet LT, Aerie Pharmaceuticals, Inc. and Perrotta, cross-move for summary judgment. They contend that plaintiff has failed to meet the serious injury threshold pursuant to section 5102 (d) and that there is no prejudice to plaintiff as an untimely cross motion may be made where a timely summary judgment motion was made on almost identical grounds. Here, the cross motion was filed on June 21, 2024, almost 90 days after the Note of Issue was filed on March 25, 2024, almost 30 days late, and without leave of court. As such, the cross motion must be denied as untimely (*See Salaam v Bowman,* 2022 NY Misc LEXIS 5512, *30 Sup Ct, NY County, Sept 21, 2022, Clynes, J.).

**CONCLUSION and ORDER**

Accordingly, it is

ORDERED that the motion of defendant Maricio Aranguren (motion sequence 001) for summary judgment in his favor and dismissal of the complaint against him is granted and the complaint is dismissed in its entirety as against said defendant, and the Clerk is directed to enter judgment accordingly in favor of said defendant; and it is further

ORDERED that the action is severed and continued against the remaining defendants; and it is further

ORDERED that the caption be amended to reflect the dismissal and that all future papers filed with the court bear the amended caption; and it is further

ORDERED that defendant Restoration Hardware, Inc. i/s/h/a RH's motion for summary judgment (motion sequence 002) is denied; and it is further

ORDERED that defendants Jose Cabrera, Reynaldo Benavides, FGO Delievers LLC d/b/a FGO Logistics LLC, s/h/a FGO Delivers LLC and FGO Logistics LLC, and Reva Trucking, LLC's motion for summary judgment (motion sequence 003) is denied; and it is further

ORDERED that defendants Ari Fleet LT, Aerie Pharmaceuticals, Inc. and Joseph Perrotta's cross motions in motion sequence numbers 001 and 003 are denied; and it is further

ORDERED that counsel for movant parties shall serve a copy of this order with notice of entry upon the Clerk of the Court and the Clerk of the General Clerk's Office, who are directed to mark the court's records to reflect the change in the caption herein; and it is further

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 17 of 18**

[* 17]

ORDERED that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website).

This constitutes the decision and order of the court.

| 3/11/2025 | | |
|-----------|---|---|
| DATE | | JAMES G. CLYNES, J.S.C. |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|------------|---|---------------|---|---|----------------------|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150675/2020  HUGER, ANTHONY JEROME vs. PERROTTA, JOSEPH**
**Motion No.  001 002 003**

**Page 18 of 18**